**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JON EASTON, an individual; and<br><br>PRIMAL MODE, INC., an Illinois corporation,<br><br>         Plaintiffs,<br><br>   v.<br><br>PRIMAL WEAR, INC. a Colorado corporation,<br><br>         Defendant. | Civil Action No. 1:17-cv-6081<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR WILLFUL TRADEMARK INFRINGEMENT, CANCELLATION OF FEDERAL TRADEMARK REGISTRATIONS, INJUNCTION AND DAMAGES; AND COMPLAINT FOR DECLARATORY JUDGMENT OF PROTECTION BASED ON OWNERSHIP OF AN INCONTESTABLE REGISTRATION AND NON-INFRINGEMENT OF TRADEMARKS**

Plaintiffs Jon Easton and Primal Mode, Inc. (collectively, "Plaintiffs") bring this action against Defendant Primal Wear, Inc. ("Primal Wear") and allege as follows:

**I. NATURE OF THE ACTION**

1. Plaintiffs, Jon Easton and Primal Mode, Inc., bring this action to halt Primal Wear's willful infringement of Plaintiffs' federally registered rights in the PRIMAL MODE® Mark and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a); unfair competition in violation of Illinois common law; and violation of Illinois' deceptive trade practices and deceptive businesses practices statutes.

2. Plaintiffs also seek a declaration that ownership of an incontestable U.S. registration for PRIMAL MODE precludes Primal Wear from seeking any claim for trademark infringement based on a likelihood of confusion or a claim for trademark

dilution. This matter is ripe for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

3.      Plaintiffs also seek the cancellation of certain PRIMAL and PRIMAL-formative trademark registrations owned by Primal Wear, pursuant to 15 U.S.C. §§ 1064 and 1119.

## II.  JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and (b). This Court also has subject matter jurisdiction pursuant to the Lanham Act, 15 U.S.C. § 1121, and federal supplemental jurisdiction under 28 U.S.C. § 1367. Diversity of citizenship exists between Plaintiffs and the Defendant and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5.      This Court has personal jurisdiction over Primal Wear, Inc. because Primal Wear, Inc. regularly conducts business in Illinois including the sale of apparel bearing the PRIMAL trademark in this District. This Court also has personal jurisdiction over Primal Wear, Inc. pursuant to the Illinois long-arm statute, 735 Ill. Comp. Stat. 5/2-209 *et seq.*, and such an assertion is in accordance with the Due Process clause of the Fourteenth Amendment of the United States Constitution.

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(3) because Plaintiffs reside in and are doing business in this District, a substantial part of the events giving rise to this action occurred in this District, and Primal Wear is doing business in this District and is subject to jurisdiction in this District.

2

### III. PARTIES

7.     Jon Easton is a U.S. citizen and apparel designer and producer who currently resides in Chicago, IL.

8.     Primal Mode, Inc. is an Illinois corporation incorporated and existing under the laws of the State of Illinois with a registered address and principal place of business at 10213 South Wood Street, Chicago, IL 60643.

9.     Mr. Easton is the president and owner of Primal Mode, Inc. Mr. Easton owns the PRIMAL MODE® trademark and has licensed use of the PRIMAL MODE® Mark to Primal Mode, Inc.

10.     Mr. Easton and Primal Mode, Inc. provide custom designed apparel to major corporations and organizations, municipalities, schools, individuals, and small businesses throughout the U.S.

11.     Defendant Primal Wear, Inc. is a corporation organized under the laws of the state of Colorado with a principal address at 7700 Cherry Creek South Drive #106, Denver, CO 80231.

### IV. FACTS

#### A. Mr. Easton's Long-Standing Use of PRIMAL MODE® Mark

12.     Jon Easton has been designing and producing apparel for more than 25 years. Mr. Easton's original designs and his exceptional production skills are renowned in the fine arts communities of Chicago, Illinois and throughout the United States. For example, Mr. Easton regularly produces apparel for the Chicago Symphony Orchestra's merchandising division.

13.     Mr. Easton discovered his passion for design while a student at the University of Wisconsin-Whitewater. After college, Mr. Easton apprenticed and worked for ten years with the legendary designer Jack Denst at The Jack Denst Designs, Inc. Denst's works are displayed in museums around the world including the Metropolitan Museum of Art in New York City and the Victoria and Albert Museum in London. While working with Denst, Mr. Easton also studied at the Harrington Institute of Design in Chicago.

14.     In 1989, Mr. Easton first created and developed the PRIMAL MODE® brand. Beginning with the first order for shirts from a Chicago boutique called "Attitudes" on Michigan Avenue in 1990, Mr. Easton and Primal Mode quickly earned a reputation for high quality, visually intriguing designs. Over the next twenty-eight (28) years, Mr. Easton has spent countless hours designing apparel under the PRIMAL MODE® brand, earning him the nickname "Primal" from the closest of his long-time customers.  Over their long history, Plaintiffs have sold apparel under the PRIMAL MODE® brand at Chicago's flagship stores Carson Pirie Scott and Marshall Fields, designed apparel for the Biltmore Estate in Asheville, North Carolina, and promoted PRIMAL MODE® apparel at trade shows in Illinois, Texas, Arizona, Minnesota, Wisconsin, Ohio, Michigan, Indiana, overseas and elsewhere.

15.     Mr. Easton first incorporated Primal Mode, Inc. in the State of Illinois in 1990 and has continuously used the business name "Primal Mode, Inc."  Primal Mode, Inc. is an active Illinois corporation that is in good standing.

16. Through his Primal Mode business, Mr. Easton currently uses and has continuously used the PRIMAL MODE® Mark in connection with apparel in interstate commerce in the U.S. since at least as early as 1990.

17. Mr. Easton has generated substantial goodwill and customer recognition in the PRIMAL MODE® Mark through more than twenty-five (25) years of continuous use.

18. Plaintiffs are regularly enlisted to create custom shirts and other apparel products for customers. Because Plaintiffs' services are the result of hard work, reliable efforts and result in high quality apparel, customers return to Plaintiffs year over year. For example, Mr. Easton and Primal Mode, Inc. recently received a heartfelt Thank You letter from the Chicago Symphony Orchestra at the conclusion of its 2016-2017 concert season. *See* <u>Exhibit A</u>, June 2, 2017 CSO Thank You Letter.

19. Consumers that purchase goods bearing the PRIMAL MODE® Mark recognize the PRIMAL MODE® Mark as an indicator of Mr. Easton's high quality apparel. Mr. Easton typically affixes the PRIMAL MODE® Mark to PRIMAL MODE® apparel in addition to other images or logos, as depicted below:











20.    Through this continuous and extensive use, Mr. Easton owns extensive common law rights in the PRIMAL MODE® Mark in connection with the design, manufacture, sale, distribution, promotion, and marketing of apparel and related goods and services. By virtue of his active and ongoing sales and promotion of goods bearing

the PRIMAL MODE® Mark for more than a quarter of a century, Mr. Easton has generated substantial goodwill and customer recognition in his PRIMAL MODE® Mark.

21.     Mr. Easton maintains an active studio for the production of PRIMAL MODE® apparel. Through his Primal Mode business, Mr. Easton has expended substantial sums of money creating PRIMAL MODE® apparel for his customers, and he has derived substantial revenues from the production and sale of PRIMAL MODE® apparel.

### B.  Mr. Easton's Federally Registered PRIMAL MODE® Mark

22.     On June 15, 1990, Mr. Easton filed U.S. Application Serial No. 74/070,558 to register the PRIMAL MODE® Mark in standard character format for "sportswear including, but not limited to T-shirts, sweatshirts and sweatpants" in Class 25 in the United States Patent and Trademark Office ("USPTO"), claiming a date of first use in U.S. commerce at least as early as May 7, 1990 (the "PRIMAL MODE Application").

23.     On February 15, 1991, the identification of goods in the PRIMAL MODE Application was amended to "sportswear; namely, shirts, shorts and pants" pursuant to an Examiner's Amendment.

24.     On August 6, 1991, the USPTO published the PRIMAL MODE Application.

25.     On October 29, 1991, the USPTO issued Registration No. 1,662,541 for the PRIMAL MODE® Mark (the "PRIMAL MODE Registration").

26.     On May 5, 1997, Mr. Easton filed an Affidavit of Use and Incontestability under Sections 8 and 15 of the Lanham Act, accompanying specimens of use, and the corresponding fee in the maintenance of the PRIMAL MODE Registration.

27.    On July 7, 1997, the USPTO issued a Notice of Acceptance and Acknowledgement of Mr. Easton's affidavit and the incontestability of the PRIMAL MODE Registration.

28.    On November 23, 2001, Mr. Easton filed a Combined Declaration of Use and Application for Renewal, accompanying specimens of use, and the corresponding fee in the maintenance of the PRIMAL MODE Registration, which was subsequently accepted by the USPTO.

29.    On July 27, 2011, Mr. Easton filed a Combined Declaration of Use and Application for Renewal, accompanying specimens of use, and the corresponding fee in the maintenance of the PRIMAL MODE Registration.

30.    On July 30, 2011, the USPTO issued a Notice of Acceptance and Renewal in the maintenance of the PRIMAL MODE Registration.

31.    The PRIMAL MODE® Mark is validly and legally registered on the Principal Register of the United States Patent and Trademark Office.

32.    From the date of registration of the PRIMAL MODE® Mark to present, Mr. Easton has made all necessary filings for the maintenance and renewal of the PRIMAL MODE Registration. A copy of the registration certificate for the PRIMAL MODE Registration and a printout of the history of the PRIMAL MODE Registration from the USPTO's Trademark Status & Document Retrieval ("TSDR") system are attached as Exhibit B.

33.    Pursuant to 15 U.S.C. § 1057(b), Mr. Easton's federal registration certificate is *prima facie* evidence of the validity of his PRIMAL MODE® Mark as well as Mr. Easton's ownership and exclusive right to use his PRIMAL MODE® Mark in

connection with the goods identified in the registration certificate. Moreover, Mr. Easton's federal registration is incontestable under 15 U.S.C. § 1065 and his incontestable registration is conclusive evidence of the validity of the PRIMAL MODE® Mark listed in the registration, Mr. Easton's ownership of the PRIMAL MODE® Mark, and Mr. Easton's exclusive right to use the PRIMAL MODE® Mark in commerce in connection with the identified goods. 15 U.S.C. § 1115(b).

34. By operation of law, an incontestable registration cannot be challenged on the basis of a likelihood of confusion or dilution. 15 U.S.C. §§ 1065, 1115(b).

35. Primal Wear had constructive notice of Mr. Easton's ownership of the federally registered rights to the PRIMAL MODE® Mark under 15 U.S.C. § 1072, at least as early as October 29, 1991.

36. Primal Wear had actual notice of the PRIMAL MODE Registration at least as early as October 22, 2007, when Primal Wear's application to register PRIMAL (Serial No. 77/228,965) for "Clothing, headwear and sportswear, namely, shorts, tights, shirts, jerseys, jackets, headbands, and hats," was initially refused registration due to a likelihood of confusion with the Plaintiffs' PRIMAL MODE® Mark. A copy of the examiner's office action is attached as Exhibit C.

37. As a result of Plaintiffs' long-standing use, advertising and promotion, and registration of the PRIMAL MODE® Mark, Mr. Easton owns strong, incontestable rights in the PRIMAL MODE® Mark.

## C. Primal Wear's Unauthorized Use and Registration of PRIMAL and PRIMAL-Formative Marks

38. After Mr. Easton began using the PRIMAL MODE® Mark in connection with sportswear through his Primal Mode business, and with knowledge of Plaintiffs'

rights, Primal Wear first adopted and used PRIMAL and PRIMAL-formative marks for apparel marketed only within the cycling industry.

39.     At some point, Primal Wear rebranded its product line from "PRIMAL WEAR" to "PRIMAL."

40.     The mark PRIMAL is fully encompassed within Mr. Easton's PRIMAL MODE® Mark.

41.     In October and November 2015, Primal Wear's CEO, Dave Edwards, phoned, emailed, and sent a letter to Mr. Easton, offering to purchase the PRIMAL MODE® Mark. Mr. Edwards told Mr. Easton by telephone that he noticed there might be some conflict between Primal Wear, Inc. and Primal Mode, Inc., and that the PRIMAL MODE Registration had slipped through the cracks. Because this was an active business for Mr. Easton, Mr. Easton declined to sell or assign the PRIMAL MODE® Mark to Primal Wear, and discussions between the parties ceased.

42.     Despite Primal Wear's actual knowledge of Plaintiffs' prior rights, Primal Wear has dramatically expanded its product line and distribution network since the discussions between the parties ceased.

**D. Primal Wear's Petition to Cancel the PRIMAL MODE Registration**

43.     On March 15, 2017, Primal Wear filed a Petition to Cancel the PRIMAL MODE Registration before the Trademark Trial and Appeal Board ("TTAB") at the USPTO (Cancellation No. 92065619). The Petition to Cancel alleges a likelihood of confusion with several of Primal Wear's registered PRIMAL and PRIMAL-formative marks and dilution of several of Primal Wear's registered marks. A copy of the Petition to Cancel is attached as Exhibit D.

44.     In its Petition to cancel, Primal Wear admits that Mr. Easton's PRIMAL MODE Mark "so resembles" Primal Wear's PRIMAL Marks because they share the same root word, "Primal." Primal Wear also admits that Mr. Easton's use of the PRIMAL MODE® Mark is "likely to cause confusion, mistake or deception" among consumers; that the PRIMAL MODE® Mark "creates a confusingly similar commercial impression" to Primal Wear's registered marks; and that the PRIMAL MODE® Mark is "likely to create a false designation of origin and false or misleading representation of fact that is likely to cause confusion, or to cause mistake, or to deceive as to an affiliation, connection, or association between [Primal Wear] and [Mr. Easton]." Exhibit D, Pet. to Cancel, ¶ 24-25.

45.     Primal Wear admits in its Petition to Cancel that the PRIMAL MODE® Mark is likely to be confused with the registered marks identified in the table below ("Primal Wear Marks"):

| Mark | Goods / Services | Reg. No. | Reg. Date |
|---|---|---|---|
| PRIMAL | Cl. 25: clothing, headwear and sportswear, namely, shorts, tights, shirts, jerseys, jackets, headbands, and hats | 3,494,801 | Sept. 2, 2008 |
| PRIMAL | Cl. 42: custom design of athletic apparel based on personal selections made by the customer; design and development of custom athletic apparel; graphic illustration services for others | 4,194,778 | Aug. 21, 2012 |
| PRIMAL WEAR | Cl. 25: athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; clothing, namely, arm warmers; cycling shorts; cyclists' jerseys; leg warmers; skullies; socks; triathlon clothing, namely, triathlon tights, triathlon shorts, triathlon singlets, triathlon shirts, triathlon suits | 4,198,616 | Aug. 28, 2012 |
| PRIMAL | Cl. 25: athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; athletic tops and bottoms for cycling; clothing, namely, arm warmers; clothing, namely, base layers; gloves; jackets and socks; t-shirts; tank tops | 4,878,576 | Dec. 29, 2015 |
| PRIMAL | Cl. 41: organizing, arranging, and conducting sports competitions in the field of cycling, running, triathlons, and other bicycle races and running events | 4,647,327 | Dec. 2, 2014 |
| PRIMAL | Cl. 35: on-line retail store services featuring apparel and accessories | 4,682,284 | Feb. 3, 2015 |

46.     The earliest registration asserted by Primal Wear was registered in 2008, Reg. No. 3,494,801; seventeen years after the registration date for Mr. Easton's PRIMAL MODE Registration.

47.     The marks depicted in Primal Wear's other asserted registrations, Reg. Nos. 4,194,778; 4,198,616; 4,878,576; 4,647,327; and 4,682,284, were registered between 2012 and 2015. These registrations are less than five years old and have not achieved incontestable status.

## COUNT I: DECLARATION OF NON-INFRINGEMENT
## 28 U.S.C. §§ 2201, 2202

48.     Plaintiffs repeat, reallege, and incorporate by reference the allegations of paragraphs 1 through 47 as though set forth fully herein.

49.     Mr. Easton first used the PRIMAL MODE® Mark at least as early as 1990, before Primal Wear adopted and used the Primal Wear Marks.

50.     Mr. Easton has continuously used and currently uses the PRIMAL MODE® Mark. He has not abandoned his rights in the PRIMAL MODE® Mark, nor did he commit a fraud upon the USPTO in the application, registration, or maintenance of the PRIMAL MODE Registration.

51.     Mr. Easton owns an incontestable U.S. registration for the PRIMAL MODE® Mark, Reg. No. 1,662,541, for "sportswear; namely, shirts, shorts and pants."

52.     Mr. Easton's prior and continuing use of the PRIMAL MODE® Mark does not infringe any of the Primal Wear Marks or any other trademark rights owned by Primal Wear.

53.    Because Mr. Easton owns an incontestable registration, Primal Wear is statutorily barred from claiming that Mr. Easton's PRIMAL MODE registration should be challenged on the basis of a likelihood of confusion and dilution.

54.    Despite the statutory bar to Primal Wear's claims of likelihood of confusion and dilution, Primal Wear asserts these claims as bases to cancel Mr. Easton's incontestable registration, together with claims of abandonment and fraud on the USPTO.

55.    An actual, present, and justiciable controversy has arisen between Plaintiffs and Primal Wear due to Primal Wear's Petition to Cancel the PRIMAL MODE Registration No. 1,662,541 in the USPTO. Plaintiffs and Primal Wear have adverse legal interests. Primal Wear has made clear to Plaintiffs that Primal Wear believes that Plaintiffs' use of the PRIMAL MODE® Mark infringes the Primal Wear Marks due to a likelihood of confusion, false designation of origin, and dilution. The dispute between Plaintiffs and Primal Wear is substantial, definite and immediate, and not hypothetical.

56.    A declaratory judgment should be entered in favor of Plaintiffs, declaring that Plaintiffs' priority of use of the PRIMAL MODE® Mark in connection with the design, manufacture, sale, distribution, promotion, and marketing of apparel and related goods and services affords Plaintiffs prior common law rights in the PRIMAL MODE® Mark; that Mr. Easton's incontestable Registration No. 1,662,541 is conclusive evidence of his priority of use and validity of the PRIMAL MODE® Mark; and that for these reasons, Plaintiffs cannot infringe upon Primal Wear's alleged rights in its PRIMAL and PRIMAL-formative marks in connection with apparel and related goods and services as a matter of law.

57.     To resolve the legal and factual questions raised by Primal Wear and to afford relief from the uncertainty and controversy that Primal Wear's actions and assertions have precipitated, Plaintiffs are entitled to a declaratory judgment of their rights under 28 U.S.C. §§ 2201 and 2202.

### COUNT II: PETITION TO CANCEL TRADEMARK REGISTRATIONS
### 15 U.S.C. §§ 1064, 1119

58.     Plaintiffs repeat, reallege, and incorporate by reference the allegations of paragraphs 1 through 57 as though set forth fully herein.

59.     Plaintiffs believe they have been, are, and will continue to be damaged by Primal Wear's continuing registration of the Primal Wear Marks depicted in the below registrations:

| Mark | Reg. No. | Reg. Date |
|------|----------|-----------|
| PRIMAL | 4,194,778 | Aug. 21, 2012 |
| PRIMAL WEAR | 4,198,616 | Aug. 28, 2012 |
| PRIMAL | 4,878,576 | Dec. 29, 2015 |
| PRIMAL | 4,682,284 | Feb. 3, 2015 |

("Primal Wear's Contestable Registrations").

60.     Plaintiffs have continuously used the PRIMAL MODE® Mark in connection with goods and services similar to and related to the goods and services identified in Primal Wear's Contestable Registrations since at least as early as May 7, 1990, which is prior to Primal Wear's first use of any PRIMAL or PRIMAL-formative marks.

61.     On October 29, 1991, long prior to the application filing dates for any of Primal Wear's Contestable Registrations, Mr. Easton obtained the PRIMAL MODE Registration for goods highly similar to and related to the goods and services subsequently identified in Primal Wear's Contestable Registrations.

62.     Primal Wear admitted in its Petition to Cancel the PRIMAL MODE Registration that the marks in Primal Wear's Contestable Registrations are similar to the PRIMAL MODE® Mark and that consumer confusion is likely.

63.     Primal Wear's use and registration of PRIMAL and PRIMAL-formative marks in connection with apparel and related services is likely to damage and harm Plaintiffs by deceiving and confusing the public into mistakenly believing that the goods and services sold by Primal Wear are those of Plaintiffs or are sponsored by, licensed by, endorsed by or are otherwise associated with Plaintiffs.

64.     By virtue of such damage and harm, Plaintiffs petition the Court to cancel Primal Wear's Contestable Registrations in their entirety, pursuant to Sections 14 and 37 of the Lanham Act, 15 U.S.C. §§ 1064 and 1119.

## COUNT III: FEDERAL WILLFUL TRADEMARK INFRINGEMENT
## 15 U.S.C. § 1114(1)

65.     Plaintiffs repeat, reallege, and incorporate by reference the allegations of paragraphs 1 through 64 as though set forth fully herein.

66.     Mr. Easton owns exclusive rights in the U.S. for the PRIMAL MODE® Mark, as evidenced by U.S. Reg. No. 1,662,541, of which Primal Wear had actual and constructive notice.

67.     Primal Wear admitted in its Petition to Cancel the PRIMAL MODE Registration that the marks in Primal Wear's Contestable Registrations are similar to the PRIMAL MODE® Mark and that consumer confusion is likely.

68.     Primal Wear's unauthorized and infringing use of the Primal Wear Marks is likely to cause confusion, mistake or deception as to the source or sponsorship of Primal Wear's goods. The consuming public is likely to believe that Primal Wear's

goods originate with Plaintiffs, are licensed, sponsored or approved by Plaintiffs, or are in some way connected with or related to Plaintiffs, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

69.     Primal Wear's unauthorized and infringing use of the Primal Wear Marks, as alleged herein, constitutes intentional and willful infringement of Plaintiffs' rights in and to the federally registered PRIMAL MODE® Mark, as pled herein, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

70.     Primal Wear's infringing acts have occurred in interstate commerce and have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law.

## COUNT IV: FEDERAL UNFAIR COMPETITION
## 15 U.S.C. § 1125(a)

71.     Plaintiffs repeat, reallege, and incorporate by reference the allegations of paragraphs 1 through 70 as though set forth fully herein.

72.     Primal Wear's apparel products and related services under the Primal Wear Marks are likely to cause confusion among consumers, and constitute use of a false designation of origin, or a false representation, which wrongfully and falsely designate the origin of Primal Wear's goods and services as originating from, being connected with, or sponsored by Plaintiffs, and thereby constitute a false description or representation used in interstate commerce. Plaintiffs have no adequate remedy at law.

73.     By virtue of the aforementioned acts, Primal Wear has violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT V: ILLINOIS COMMON LAW UNFAIR COMPETITION

74.     Plaintiffs repeat, reallege, and incorporate by reference the allegations of paragraphs 1 through 73 as though set forth fully herein.

75.     As a result of its actions, Primal Wear has misappropriated valuable property rights of Mr. Easton and Primal Mode, is trading on the goodwill symbolized by Plaintiffs, and is likely to continue to confuse and deceive members of the purchasing public. Primal Wear's infringement of Plaintiffs' common law rights has injured Plaintiffs and the PRIMAL MODE® Mark and, if not stopped, will continue to injure Mr. Easton and Primal Mode and cause further diminishment and devaluation of the PRIMAL MODE® Mark. Plaintiffs have no adequate remedy at law.

76.     By virtue of the aforementioned acts, Primal Wear has engaged in common law unfair competition with respect to the PRIMAL MODE® Mark.

## COUNT VI: ILLINOIS DECEPTIVE TRADE PRACTICES
### 815 ILCS § 510/1 et seq.

77.     Plaintiffs repeat, reallege, and incorporate by reference the allegations of paragraphs 1 through 76 as though set forth fully herein.

78.     Primal Wear's marketing and sale of apparel and related services featuring the Primal Wear Marks causes a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of said goods and services, inasmuch as it gives rise to the incorrect belief or assumption that Primal Wear's goods and services have some connection with Mr. Easton or Primal Mode, when they do not. Plaintiffs have sustained injury to their business' reputation and goodwill, and Primal Wear has unlawfully derived income and profits from its wrongful acts. Unless enjoined by this

Court, these acts by Primal Wear will continue to violate Plaintiffs' rights and cause injury to Plaintiffs. Plaintiffs have no adequate remedy at law.

79.     By virtue of the aforementioned acts, Primal Wear has engaged in conduct in violation of Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 *et seq.*

### COUNT VII: VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### 815 ILCS § 505/1, et seq.

80.     Plaintiffs repeat, reallege, and incorporate by reference the allegations of paragraphs 1 through 79 as though set forth fully herein.

81.     Primal Wear uses, continues to use, and intends to continue to use the Primal Wear Marks without permission from Plaintiffs, and thus willingly, knowingly, and intentionally violates Plaintiffs' rights by its unauthorized use, as to suggest to the public that there exists an association or affiliation between Plaintiffs' and Primal Wear's goods and services, or that Plaintiffs have sponsored or endorsed Primal Wear's goods and services, when they have not.

82.     Primal Wear's conduct causes and is likely to cause consumer confusion as to, and misrepresents, the origin, quality, characteristics, and source of its goods.

83.     By its acts, Primal Wear has made and will make substantial profits and gains to which it is not in law or equity entitled to receive.

84.     Plaintiffs, by way of Primal Wear's acts alleged herein, have suffered, and will continue to suffer damage and injury to their business, reputation, and goodwill.

85.     By virtue of the aforementioned acts, Primal Wear has engaged in conduct in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

A.  That this Court declare that Mr. Easton's use of the PRIMAL MODE$^{®}$ Mark does not infringe the rights of Primal Wear;

B.  That this Court declare that Mr. Easton's PRIMAL MODE Registration is valid and may subsist on the Principal Register;

C.  That this Court declare that Primal Wear's Contestable Registrations are invalid and shall be cancelled;

D.  That Primal Wear, its officers, agents, servants, employees, attorneys, successors, related companies and assigns, and all those in active concert or participation with them, be forthwith preliminarily and thereafter permanently enjoined and restrained from:

1.  Using the term "PRIMAL", either alone or in connection with other words or designs, and using any other confusingly similar marks, in connection with the advertising, promotion and sale of its goods and services;

2.  Using any mark, name, symbol, sign or indicia, or making any statement, which suggests or indicates that Primal Wear's business is in any way connected with or part of Mr. Easton's or Primal Mode's business;

3.  Doing any other act or thing likely to induce the mistaken belief that Primal Wear's goods and services are in any way affiliated, connected or associated with Mr. Easton or Primal Mode;

4.  Unfairly competing with Plaintiffs in any manner whatsoever;

5. Causing a likelihood of confusion with respect to Plaintiffs' PRIMAL MODE Mark, or injury to the business reputation of Mr. Easton or Primal Mode; and

6. Holding itself out in any way as a licensee of Plaintiffs, or doing anything that would indicate any relationship between Primal Wear and Plaintiffs;

E. That, pursuant to 15 U.S.C. § 1116, Primal Wear be directed to file with the Court and serve upon Plaintiffs within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Primal Wear has complied with the injunction;

F. That, because of willful actions by Primal Wear, and pursuant to 15 U.S.C. §1117, Plaintiffs be awarded monetary relief in an amount to be fixed by the Court in its discretion as just, including:

1. All profits received by Primal Wear from sales and revenues of any kind made as a result of their actions, and all damages sustained by Plaintiffs as a result of Primal Wear's actions, and that such profits and damages be trebled; and

2. The costs of the action;

G. That because of the exceptional nature of this case resulting from Primal Wear's deliberate and willful infringing actions, the Court award to Plaintiffs all reasonable attorneys' fees, costs, and disbursements incurred by them as a result of this action pursuant to 15 U.S.C. §1117(a) and 815 Ill. Comp. Stat. §510/3; and

H. That the Court award such other and further relief as the Court may deem proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues presented in this Complaint.

Respectfully submitted,

Dated: August 21, 2017                    By: /s/ J. Ryan Hinshaw

Joseph V. Norvell
Joseph T. Kucala, Jr.
J. Ryan Hinshaw
NORVELL IP LLC
1776 Ash Street
Northfield, Illinois 60093
courts@norvellip.com
Phone: (888) 315-0732
Fax:   (312) 268-5063

*Attorneys for*
*Jon Easton and Primal Mode, Inc.*