**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JON EASTON and PRIMAL MODE, INC., | ) ) ) | |
| Plaintiffs/Counterclaim Defendants, | ) ) ) | No. 17-cv-06081 |
| v. | ) ) | Judge John J. Tharp, Jr. |
| PRIMAL WEAR, INC., | ) ) ) | |
| Defendant/Counterclaim Plaintiff. | ) ) ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Jon Easton and his custom apparel design company Primal Mode, Inc. filed a complaint against defendant Primal Wear, Inc. on August 21, 2017 (followed by an amended complaint on October 27, 2017) alleging trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125, the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS § 505/1, *et seq*, and the Illinois Uniform Deceptive Trade Practices Act ("IDTPA"), 815 ILCS § 510/1 *et seq*.[1] In response, Primal Wear lodged a counterclaim seeking cancellation of Easton's trademark and simultaneously moved to dismiss Easton's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). While the motion to dismiss was pending, the parties engaged in discovery and Primal Wear subsequently moved for summary judgment. For reasons discussed more fully in the following analysis, both motions are denied.

---

[1] The parties agree that Easton and Primal Mode are "essentially one and the same." Defendant's Statement of Undisputed Material Facts ("DSOF") ¶ 1, ECF No. 126. For clarity, the Court refers to plaintiffs collectively as "Easton."

# BACKGROUND

Since 1989, Jon Easton has operated Primal Mode, a screen-printing business, from his home in Chicago. On October 29, 1991, Easton obtained a class 25 (clothing and apparel products) trademark registration for the standard character mark PRIMAL MODE in connection with sportswear including shirts, shorts, and pants (Registration No. 1,662,541). Plaintiff's Statement of Additional Undisputed Material Facts ("PSOF") ¶ 2, ECF No. 122; Plaintiff's Ex. 1. The mark was granted incontestable status in 2001 and renewed in 2011.[2] PSOF at ¶ 3. Through Primal Mode, Easton creates artwork and sells custom designed clothing to small businesses, organizations, and individuals. *Id.* at ¶ 5. The parties agree that Easton focuses largely on screen-printing custom t-shirts but dispute the extent to which Easton sells other items of clothing and the extent to which Easton sells apparel of any sort to customers outside of Illinois. When the PRIMAL MODE mark is affixed to clothing, it sometimes appears in the form of an intricate logo:



Other times, though, the name appears in plain block lettering:



*Id.* at ¶ 7.

Defendant Primal Wear sells custom and branded cycling apparel. Primal Wear was founded in 1992, and as of 2016, was taking in more than $10,000,000 in annual revenue.

---

[2] An incontestable mark can be canceled only for reasons set forth in 15 U.S.C. § 1064(3) and § 1052(a)-(c).

Defendant's Statement of Undisputed Material Facts ("DSOF") ¶¶ 35, 45, ECF No. 100. Over the years, Primal Wear has obtained numerous class 25 trademarks for use in connection with clothing and sportswear. First, in 2000, Primal Wear obtained a design trademark for "PRIMAL WEAR" (Registration No. 2,327,783).[3] A copy of the mark is shown here:

**PRIMAL**wear

In 2007, Primal Wear applied to register the mark "PRIMAL." The United States Patent and Trademark Office ("USPTO") initially rejected the application because the examining attorney expressed that the mark was likely to be confused with the "PRIMAL MODE" mark. Primal Wear contends that, after writing to the office, the office eventually reversed its position as to registration and in 2008 approved the standard character trademark "PRIMAL" (Registration No. 3,494,801). *Id.* at ¶ 28. In 2009, P3 PRIMAL3 and P PRIMAL were also trademarked (Registration Nos. 3,626,224 and 3,626,226, respectively):



Next, in 2012, Primal Wear registered a standard character PRIMAL WEAR mark (Registration No. 4,198,616). Finally, in 2015, Primal Wear registered a stylized version of the PRIMAL mark (Registration No. 4,878,576) seen here:

---

[3] Due to a lapse by counsel, the mark was cancelled in 2006 but re-registered in 2007 (No. 3,350,960). DSOF ¶ 27. Between 2004 and 2007, Primal Wear obtained similar design trademarks for PRIMAL BIKES (Registration No. 2,875,532) and PRIMAL SPORTS AND FITNESS (Registration No. 3,213,870). Defendant's Ex. 15.

In addition to its class 25 clothing trademarks, Primal Wear also obtained standard character trademarks for PRIMAL in connection with custom design services (Registration No. 4,194,778), sports competitions (Registration No. 4,647,327), and online retail services featuring accessories (Registration No. 4,682,284).

Primal Wear president and CEO Dave Edwards became personally aware of Primal Mode, Inc. and the PRIMAL MODE trademark after searching the USPTO website for the term "primal" in March 2010.[4] At that time, Edwards attempted to contact Easton to discuss his use of the mark. DSOF at ¶ 54. Primal Wear maintains that Edwards and Easton spoke on the phone in April 2010 and that Edwards subsequently sent a letter to Easton offering $2,000 to purchase rights to the PRIMAL MODE mark. Easton disputes this, saying that he has no memory of any conversation taking place or receiving said letter. *Id.* at ¶¶ 55-57. It is undisputed, however, that in October 2015 Edwards spoke with Easton about purchasing the rights and that in November 2015, Eason declined the offer. *Id.* at ¶ 60.

In March 2017, Primal Wear filed a petition with the USPTO to cancel the PRIMAL MODE registration for non-use, alleging that Easton made false statements to the Trademark Office and that there was a likelihood of confusion between the PRIMAL MODE mark and the PRIMAL and PRIMAL WEAR marks. *Id.* at ¶ 52; Defendant's Ex. 47, ECF No. 104. On August 22, 2017 (the day after he filed his complaint in this district), Easton asked the USPTO to suspend proceedings pending a final determination in this action. A week later, Primal Wear sought to

---

[4] To be clear, Primal Wear contends that while its lawyers were aware of PRIMAL MODE in 2007 when they were attempting to register the PRIMAL mark, Primal Wear leadership did not become personally aware of PRIMAL MODE until 2010. Defendant's Memorandum in Support of its Motion for Summary Judgment 15 n.8, ECF No. 126.

amend its petition and withdraw the likelihood of confusion claim.[5] In response, the USPTO *sua sponte* dismissed the likelihood of confusion claim as time-barred under 15 U.S.C. § 1064(1), which requires likelihood of confusion-based cancellation claims to be brought within five years of the date the trademark is registered, and dismissed the fraud claim as insufficiently pled. Defendant's Ex. 49. The USPTO also stated, however, that it would suspend the proceedings and that Primal Wear would have an opportunity to replead the fraud claim should the proceedings resume. *Id.*

In this case, Easton's amended complaint seeks the cancellation of certain contestable trademarks owned by Primal Wear and alleges that Primal Wear violated the Lanham Act and the Illinois Deceptive Trade Practices Act by willfully infringing on the PRIMAL MODE trademark and engaging in unfair competition. Easton also seeks a declaration 1) of the validity of his PRIMAL MODE trademark and 2) that because his mark is valid and he is the senior user, he has not and cannot infringe on Primal Wear's trademarks. Primal Wear counterclaimed with a petition for partial cancellation of the PRIMAL MODE trademark and simultaneously moved to dismiss Easton's complaint.[6] After the parties engaged in discovery but before the Court ruled on that

---

[5] Primal Wear asserts that its lawyer mistakenly included the allegation in the initial petition and that there is not, in fact, a likelihood of confusion; Easton vehemently disputes those assertions and argues that Primal Wear's USPTO filing bars Primal Wear from disputing that there is a likelihood of confusion between the parties' respective marks, a central element in most of the theories Primal Mode asserts in its complaint.

[6] In its motion to dismiss, Primal Wear argued that the Court lacks subject matter jurisdiction to entertain Easton's claim for declaratory relief. Federal courts may issue declaratory judgments only where there is an "actual controversy." In the trademark infringement context, this means that "the defendant must have engaged in conduct giving rise to a reasonable apprehension on plaintiff's part that it will face an infringement suit or the threat of one if it commences or continues the activity in question." *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980). Primal Wear argues that there is no actual controversy because, as the senior user, Easton cannot be liable for infringement. This argument is not terribly persuasive, however, given that Primal Wear has challenged the validity of Easton's mark. Further, the mere fact that Easton may have a viable defense does not necessarily mean that his apprehension of being sued is

motion, Primal Wear moved for summary judgment. For the following reasons, the motion for summary judgment is denied and, except where otherwise noted, the motion to dismiss is denied as moot.[7]

## LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on motions for summary judgment, courts view the facts in the light most favorable to the non-moving party. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). And if the non-moving party identifies evidence sufficient to sustain a jury verdict in its favor, summary judgment must be denied. *Maxwell v. City of Indianapolis*, 998 F.2d 431, 433 (7th Cir. 1993).

The nub of Easton's complaint is that Primal Wear violated the Lanham Act by infringing on the PRIMAL MODE trademark and engaging in unfair competition. To prevail on either theory, Easton must establish that 1) his mark is protectable, and 2) Primal Wear's use of its marks is likely to cause confusion among consumers. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638

---

unreasonable. Nor does Primal Wear's withdrawal of its likelihood of confusion allegation (a necessary element of an infringement action) ***after*** Easton initiated this suit say much about Easton's apprehension at the time of filing. *See Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995) (explaining that courts make actual controversy determinations based on "the facts existing at the time the complaint is filed."). Nevertheless, courts "may properly refuse to grant declaratory relief for prudential reasons," *id.*, and through its admissions and representations in this case, Primal Wear has effectively precluded its ability to pursue an infringement claim against Primal Mode. Accordingly, the Court sees no reason to address Easton's claim for a declaration of non-infringement and declines to do so even assuming it has jurisdiction. Primal Wear's motion to dismiss Easton's claim for declaratory relief for lack of subject matter jurisdiction is therefore denied as moot.

[7] Primal Wear's motion to dismiss focused primarily on the same timeliness issues discussed below in the context of laches. The other arguments raised in the motion to dismiss are discussed in *supra* note 6 and *infra* notes 9 and 12.

n.8 (7th Cir. 2001) ("Proof of these two elements is required for both federal claims."). Easton's petition to cancel Primal Wear's contestable trademarks and all of his state law theories similarly turn on whether Primal Wear's use of its PRIMAL WEAR and PRIMAL marks "causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services." [8] 815 ILCS 510/2; 815 ILCS 505/2; *see also* Am. Compl. ¶ 69 (petitioning to cancel Primal Wear's marks based on a likelihood of confusion).

In seeking summary judgment, Primal Wear must demonstrate that undisputed evidence demonstrates that no reasonable jury could find in Primal Mode's favor. Primal Wear argues that Easton has abandoned the PRIMAL MODE mark (making it subject to cancelation) and that partial cancellation (which Primal Wear seeks via its counterclaim) would foreclose a finding of likelihood of confusion that is necessary for Primal Mode to prevail on its claims. Primal Wear also maintains that, even if not canceled, the evidence establishes that no confusion between the PRIMAL MODE mark and the PRIMAL WEAR/PRIMAL marks is likely. It also argues that all

---

[8] Easton labels Count V of his complaint as "Illinois Common Law Unfair Competition." Courts in this district have explained that "[i]n Illinois, the common law tort of unfair competition encompasses a 'broad spectrum of law' and it is difficult to determine exactly what elements are required in order to prove such a claim." *LG Elecs. v. Whirlpool Corp.*, 08 C 242, 2010 WL 3521785, at *2 (N.D. Ill. Sept. 1, 2010); *see also Wilson v. Electro Marine*, 915 F.2d 1110, 1118 (7th Cir.1990) ("The law of unfair competition . . . is elusive; its elements escape definition . . . ."). Because the allegations contained in Count V reference Primal Wear's misappropriation of Easton's property rights and the fact that such conduct is likely to confuse the purchasing public, the Court construes the theory as common law trademark infringement. *See Poneman v. Nike, Inc.*, 161 F. Supp. 3d 619, 631 (N.D. Ill. 2016) ("The elements of a claim for common law trademark infringement are the same as under 15 U.S.C. § 1125(a).").

of Easton's theories are time barred. Because there are genuine fact disputes material to these issues, however, the Court must deny Primal Wear's motion for summary judgment.

**DISCUSSION**

**I.   Validity of the PRIMAL MODE mark and Primal Wear's Counterclaim Petition for Partial Cancellation**

Turning first to Primal Wear's petition for cancellation, the Court finds that Primal Wear has not satisfied its burden of showing that Easton abandoned his trademark. Under the Lanham Act, "any person who believes that he is or will be damaged . . . by the registration of a mark on the principal register" may file a petition to cancel the registration on grounds of abandonment regardless of its contestability status. 15 U.S.C. § 1064(3); § 1115(b). The party seeking cancellation can establish a prima facie case of abandonment by showing proof of nonuse for three consecutive years. 15 U.S.C. § 1127. The burden then shifts to the trademark owner to produce evidence that he used the mark during the statutory period. *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1087 (Fed. Cir. 2000).

Easton's trademark registration covers "sportswear; namely shirts, shorts and pants." Defendant's Ex. 4. Primal Wear maintains that Easton has admitted to not selling PRIMAL MODE branded shorts or pants since 2007 and accordingly requests removal of those items from the registration's identification of goods. But this mischaracterizes Easton's testimony. First, during Easton's deposition, he was asked only about selling PRIMAL MODE branded ***shorts***; pants were not referenced. Second, when asked whether the shorts sales would have all taken place before 2007, Easton responds only "could be, yeah," Defendant's Ex. 1 at 41:2-18, and that he "doesn't know" the last time he ordered shorts for an out of state shipment. *Id.* at 117:14-22. Given that he states throughout his deposition that his business records are more reliable than his memory (*see, e.g., id.* at 13:20-22), and the requirement to give the non-moving party the benefit of reasonable

inferences, the Court cannot agree that Easton's responses to questioning amount to a verbal concession of non-use. And to that point, Easton's business records do not establish abandonment either. To the contrary, the invoices Primal Wear points to show that Easton has made multiple sales of shorts and pants in the last three years. Further, the exhibits do not establish that the shorts and pants sold were not branded with the PRIMAL MODE mark or attached to a PRIMAL MODE tag. This evidence is not sufficient, then, to establish as a matter of law that Easton has not been using his mark continuously. *See* Defendant's Ex. 11. Because there is a genuine dispute with respect to the issue of abandonment, Primal Wear's motion for summary judgment on its cancellation petition is denied.

Primal Wear, though, does not merely seek partial cancellation. It also requests that the registration description be modified to read "T-shirts, excluding cycling apparel, specifically imprinted with messages and/or designs." Defendant's Reply Brief in Support of Motion for Summary Judgment 14, ECF No. 129. Primal Wear, citing *Dak Indus. Inc. v. Daiichi Kosho Co.*, 35 U.S.P.Q. 2d 1434 (Trademark Tr. & App. Bd. 1995), argues that the proposed restriction would foreclose a finding of likely confusion, allow the marks to co-exist on the principal register, and moot Easton's infringement claim. The Court disagrees. First, *Dak Industries* involved a trademark applicant who filed a petition to restrict a senior user's mark after the senior user opposed registration of the new mark on likelihood of confusion grounds. Primal Wear, in contrast, does not seek to avoid a likelihood of confusion finding so that it can successfully register its marks (they are already registered); rather, it seeks to avoid the finding so it can escape liability for infringement. Likelihood of confusion between two marks for purposes of whether they can both be registered is not necessarily the same as likelihood of confusion in the marketplace between two already registered marks. And in any case, the Court is unaware of any caselaw suggesting

that a federal court may, in an infringement dispute, modify a senior user's trademark registration in order to eliminate the likelihood of confusion. *See Ferring B.V. v. Fera Pharmaceuticals, LLC*, 13-CV-4640 SJF AKT, 2015 WL 1359073, at *3 (E.D.N.Y. Mar. 24, 2015) (noting that it is unclear whether trademark restriction framework applies to trademark infringement actions in federal courts). Second, even if such a remedy were possible, the Trademark Trial and Appeal Board has explained that a party seeking to avoid a likelihood of confusion finding by restricting the identification of goods listed in an adverse party's registration must show that "a finding of likelihood of confusion will be avoided by entry of the restriction sought in the petition to cancel." *Id.* While Primal Wear makes the argument in conclusory fashion, it has not even attempted to make the required showing to support it. Based on the current record, the Court has no basis to modify Easton's trademark registration.

## II. Easton's Claims: Likelihood of Confusion

The Court turns next to the claims Easton asserts against Primal Wear. As noted above, likelihood of confusion is a required element of all Easton's legal theories.[9] As an initial matter, Easton maintains that Primal Wear's summary judgment motion must be denied because Primal Wear admitted in its initial cancellation petition before the USPTO that confusion between its

---

[9] In its motion to dismiss, Primal Wear argued that Easton's cancellation petition must be rejected because the contestable registrations Easton seeks to cancel are virtually identical to Primal Wear's incontestable registrations. *See* Defendant's Reply in Support of Motion to Dismiss 5, ECF No. 58 ("[I]n view of the fact that Primal Wear's use of its incontestable PRIMAL mark . . . does not create a likelihood of confusion with Plaintiffs' trademark, it logically flows that Primal Wear's use and registration of identical and nearly identical marks registered in connection with identical and substantially similar goods and services is likewise not confusing."). But the fact that a registration cannot be challenged on likelihood of confusion grounds because it is legally incontestable (*i.e.*, has been in continuous use for five consecutive years pursuant to 15 U.S.C. § 1065) does not mean that there is ***in fact*** no likelihood of confusion. Primal Wear cites no authority to the contrary. Accordingly, Primal Wear's motion to dismiss Easton's cancellation petition is denied.

marks and the PRIMAL MODE mark is likely. This argument misses the mark (no pun intended). While there may be some question as to what Primal Wear subjectively believes—after all, it moved to withdraw its likelihood of confusion allegation only after Easton filed this lawsuit—that belief is not material. Courts look to whether consumers themselves are likely to be confused, not to whether the parties believe that consumers are likely to be confused. *See Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015) ("[A] court must ask whether consumers, and specifically consumers who would use either product, would be likely to attribute them to a single source.") (internal citations omitted). Nor does Primal Wear's previous admission estop it from litigating the issue now, because the USPTO dismissed Primal Wear's likelihood of confusion allegation without addressing it on the merits. *See Saturn Corp. v. Saturn Tire & Rubber Co.*, CIV 89-CV73138DT, 1991 WL 11255269, at *2 (E.D. Mich. June 6, 1991), *aff'd*, 968 F.2d 1216 (6th Cir. 1992) (infringement defendant not bound to its withdrawn admission regarding likelihood of confusion in previous registration opposition proceeding). Primal Mode's argument that the USPTO complaint continues to bind Primal Wear because it remains "the operative pleading" in that matter, Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment 8, ECF No. 121, simply ignores the fact that the USPTO struck the paragraphs relating to the likelihood of confusion claim. Defendant's Ex. 49 at 3.

Moving on to the relevant considerations: likelihood of confusion is ultimately a determination of fact generally reserved for the jury, and summary judgment as to this question is appropriate only where the evidence is "so one-sided that there can be no doubt about how the question should be answered." *Id.* (citing *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 637 (7th Cir.2001)). Courts analyze the following seven factors in making that determination: 1) the similarity between the marks in appearance and suggestion; 2) the similarity of the products; 3)

the area and manner of concurrent use; 4) the degree and care likely to be exercised by consumers; 5) the strength of plaintiff's mark; 6) any actual confusion; and 7) the intent of the defendant to "palm off" his product as that of another.[10] *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008).[11] No single factor is dispositive, but the similarity between marks and any evidence of actual confusion are "especially important." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015). Summary judgment is appropriate where no reasonable jury, looking at the seven factors collectively, could find a likelihood of confusion. *Id.* Based on the following analysis, the Court concludes that a jury could reasonably conclude that there is a likelihood of confusion between the parties' marks.

### A. Similarity of Marks

As Easton notes, the obvious similarity between the PRIMAL MODE trademark and the PRIMAL/PRIMAL WEAR marks is that they all incorporate the word "primal." Additionally, the word "mode" is similar in meaning to the word "wear": both can refer to fashion or clothing. *See*

---

[10] Easton concedes that "there is no evidence that Defendant ever intended to pass off its products as originating from Easton." Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment at 28. Rather, Easton argues that Primal Wear intended to push him out of the market. Essentially, then, Easton (as the senior user) argues that this is a "reverse confusion" case where his products are potentially mistaken as being affiliated with the junior user. *See Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 701 (7th Cir. 2014) ("The harm from this kind of confusion is that the senior user loses the value of the trademark—its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets.") (internal citations omitted). In a reverse confusion case, "the 'intent' factor of the likelihood of confusion analysis is essentially irrelevant." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 961 (7th Cir. 1992).

[11] Citing *Sorensen*, Easton asserts that Primal Wear's motion must be denied "if there is a *single* genuine issue of material fact" with respect to any of the factors. Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment at 20 (emphasis added). *Sorensen*, however, stands for the contrary proposition. That is, "[a] court may grant summary judgment *even if there is a genuine issue of material fact as to one or more of the seven factors*, as long as no reasonable jury, looking at the seven factors as a whole, could conclude that there is a likelihood of confusion." *Id.* at 726 (emphasis added).

MERRIAM–WEBSTER, https://www.merriam-webster.com (last visited March 18, 2019) (defining "mode" as "a prevailing fashion or style" and "wear" as "fashion" or "vogue").

Of course, the mere fact that marks share a word does not by itself establish similarity. *See Sullivan v. CBS Corp.*, 385 F.3d 772, 777 (7th Cir. 2004) (marks dissimilar when viewed in entirety despite both containing the word "survivor"). And here, the marks are in some ways visually distinct. For example, PRIMAL MODE is "barely visible," or at least difficult to discern, on Easton's shirts whereas Primal Wear prominently displays its PRIMAL marks. Defendant's Memorandum in Support of Motion for Summary Judgment 19, ECF No.126. Further, to the extent Easton uses a logo on his products, it is round, intricate, and stylized to appear old-fashioned. *See* DSOF ¶ 68. The graphic design of that logo is easy to distinguish from Primal Wear's simple, contemporary PRIMAL logo. On the other hand, though, Easton does not always use that logo. Sometimes, he affixes the PRIMAL MODE mark in simple block lettering that looks very much like the lettering of the PRIMAL mark. *See* PSOF ¶ 7, DSOF ¶ 69. And in any case, the Seventh Circuit has explained that where one word of a trademark is the salient portion of the mark, "it may be given greater weight than the surrounding elements." *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1115 (7th Cir. 1997). On balance, and viewing the facts in the light most favorable to Easton, the marks are more similar than they are different.

Primal Wear counters that the similarity of two trademarks must be assessed "not merely by looking at the two marks side-by-side" but also "in light of what happens in the marketplace." *AutoZone*, 543 F.3d at 929 (quoting *Sullivan*, 385 F.3d at 777). According to Primal Wear, because the products are marketed differently—Primal Wear spends large sums on advertising while Easton relies on word of mouth and does not have an online presence—consumers are unlikely to encounter the marks together in the marketplace. This does not, however, mean that the marks are

dissimilar or that confusion is unlikely. To the contrary, "the inability to compare the [marks] side-by-side and observe the precise difference in appearance may *increase* the likelihood of confusion." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1088 (7th Cir. 1988) (citing *Sun–Fun Products, Inc. v. Suntan Research and Development, Inc.*, 656 F.2d 186 (5th Cir.1981) (emphasis added). Accordingly, although elements relating to this factor cut both ways, on balance the similarities between the marks add some weight to the likelihood of confusion side of the scale.

### B. Actual Confusion

The Court assesses actual confusion, the other most "important" factor, next. The evidence of actual confusion is easily described: there is none. Easton has adduced no evidence of record suggesting that at any time since the parties began selling apparel in the early 1990s, any customer has ever confused Primal Mode with Primal Wear or believed that the marks were connected. While "[e]vidence of actual confusion is not required to prove that a likelihood of confusion exists," *Sorensen v. WD-40 Co.*, 792 F.3d at 731, Primal Wear argues that the absence of actual confusion during the parties' substantial period of coexistence strongly suggests that confusion is not likely to occur in the future. In support, Primal Wear cites to several cases from outside this circuit approving that logic. *See, e.g.*, *Versa Products Co., Inc. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189, 205 (3d Cir. 1995) ("If a defendant's product has been sold for an appreciable period of time without evidence of actual confusion, one can infer that continued marketing will not lead to consumer confusion in the future."); *Aktiebolaget Electrolux v. Armatron Int'l, Inc.*, 999 F.2d 1, 4 (1st Cir. 1993) ("[A]n absence of actual confusion, or a negligible amount of it, between two products after a long period of coexistence on the market is highly probative in showing that little likelihood of confusion exists."). The Seventh Circuit, however, has explained that because

instances of actual confusion may be difficult to discover, "the most that the absence of evidence of actual confusion can be said to indicate is that the record does not contain any evidence of actual confusion known to the parties." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 686 (7th Cir. 2001); *see also* 4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION at § 23:18 (5th ed.) ("Absence of evidence is not evidence of absence."). This factor, then, supports Primal Wear's no-likelihood-of-confusion argument to some degree but it does not bear the weight that Primal Wear heaps upon it.

### C. Similarity of Products

A jury could reasonably conclude that the products at issue here are similar. Products are considered similar for purposes of the Lanham Act if members of the public would be likely to attribute them to a single source. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 899 (7th Cir. 2001). Easton argues that because both he and Primal Wear sell apparel (and specifically, custom apparel), the products are similar. Of course, the mere fact that the products belong to the same general class of goods does not mean that they are similar as a matter of law. *See, e.g.*, *Packman*, 267 F.3d at 645 (products dissimilar even where parties both sold t-shirts and hats because styles were distinctive); *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1045 (7th Cir. 2000) (similarity of products factor weighed in favor of finding no likelihood of confusion where both parties owned barbeque restaurants but the ambiance and theme of each was different). Primal Wear argues that its specialized cycling apparel and Easton's t-shirts are easily distinguishable. Perhaps. But the record does not establish that the types and styles of the products sold by the parties here are distinct enough to preclude a finding that confusion is likely. In fact, Primal Wear's CEO Dave Edwards testified that Primal Wear is expanding into the "athleisure" market and selling gear that's "multi-use" and not simply for "on the bike." Defendant's Ex. 2 at 67:4-6. Primal

Wear maintains that reference to its new line is a "red herring" because the new line is still marketed toward cycling enthusiasts and encompasses cycling specific features. But the fact that the apparel is marketed toward a specific subset of customers does not constitute proof that the products themselves are dissimilar, and Primal Wear itself notes that the new line has been described as including cycling features "***without being obvious.***" DSOF ¶ 39 (emphasis added). Accordingly, the Court concludes that the products are similar enough to add weight to the scale on the side of likelihood of confusion.

### D. Trademark Strength

As for trademark strength, the Seventh Circuit has explained that "[t]he stronger the mark, the more likely it is that encroachment on it will produce confusion." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 933 (7th Cir. 2008) (internal citation omitted). Strength corresponds to economic and marketing power, and here, the evidence shows that Easton's gross sales are generally less than $100,000 annually and that his business is small. *See* Defendant's Ex. 1 56:6-19. Nothing on the record, then, suggests that the PRIMAL MODE mark is particularly strong. That said, in a case such as this one where a smaller senior user sues a larger junior user, "it may make more sense to consider the strength of the mark in terms of its association with the junior user's goods," *Sands, Taylor & Wood Co.*, 978 F.2d at 959; *see also Wm. Wrigley Jr. Co. v. Swerve IP, LLC*, 900 F. Supp. 2d 794, 802 (N.D. Ill. 2012) ("In reverse confusion cases, the focus is on the junior use of the mark."). And here, the record indicates that Primal Wear's marks are quite strong. *See, e.g.,* DSOF ¶ 46 ("Defendant has spent 'many millions of dollars and countless resources to gain brand recognition in not only the cycling world, but the general marketplace.'"). It would not be

unreasonable, then, for a jury to conclude that customers would be likely to attribute Easton's products to the Primal Wear brand.

### E.  Remaining Factors: Area and Manner of Concurrent Use & Customer Care

On the other hand, the area and manner of concurrent use between the PRIMAL MODE and PRIMAL marks is unlikely to cause confusion between the marks. For example, the record indicates that Primal Wear spends considerable sums on advertising and sells its product to large retailers or at major cycling events whereas Easton advertises mainly by word-of-mouth, lacks an internet presence, and sells his apparel out of his home on a much smaller scale. In other words, nothing on the record indicates that there is a relationship in "promotion, distribution, or sales" between the goods of the parties. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 900 (7th Cir. 2001).

The degree of customer care also weighs in favor of a finding of no confusion. The evidence is somewhat scare with respect to this factor, but it is undisputed that both Primal Wear and Easton frequently sell in bulk, *see* DSOF ¶ 40; PSOF ¶ 5; *see also* Defendant's Ex. 11 (invoices showing several large PRIMAL MODE orders), and that their respective customers are likely to be "socially aware." DSOF ¶ 40; Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment at 26. These facts suggest that customers of both Primal Mode and Primal Wear would likely exercise care when making purchases and therefore be less likely to mistake one party's products for the other's. The customer care factor, then, tends to support Primal Wear.

To summarize, the similarity of the marks, similarity of the products, and trademark strength weigh in favor of Easton and likelihood of confusion, whereas the absence of evidence of actual confusion, the area/manner of use, and degree of customer care weigh in favor of Primal

Wear. Plainly, this evidence, considered collectively, cannot reasonably be said to be "so one sided" as to warrant summary judgment.[12]

## III. Laches

Primal Wear also argues that summary judgment should be granted in its favor because Easton's filing of this suit was unjustifiably delayed. The Court disagrees. The Lanham Act does not specify a statute of limitations, but provides for defensive use of "equitable principles, including laches." 15 U.S.C. § 1115(b)(9). For laches to apply, the defendant must show 1) that the plaintiff had knowledge of the defendant's use of an allegedly infringing mark, 2) that the plaintiff inexcusably delayed in taking action with respect to that use, and 3) that the defendant would be prejudiced by allowing the plaintiff to assert its rights at this time. *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792 (7th Cir. 2002). Primal Wear fails on the first two elements.

As to the first prong, a trademark infringement plaintiff must have either "actual or constructive notice of the defendant's activities," *id.* at 793. With respect to constructive notice, a trademark owner "is chargeable with information it might have received had due inquiry been made," *Safeway Stores, Inc. v. Safeway Quality Foods, Inc.*, 433 F.2d 99, 103 (7th Cir. 1970), so

---

[12] With respect to the rest of Easton's legal theories, the only argument Primal Wear makes is that Easton lacks standing to assert a cause of action under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). Defendant's Memorandum in Support of Motion to Dismiss 14, ECF No. 45. Standing, however, is not the issue. *See Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) ("Plaintiffs have standing if they have been injured, the defendants caused that injury, and the injury can be redressed by a judicial decision."). What Primal Wear truly seems to argue is that Easton failed to state a claim under the ICFA because he did not adequately allege that Primal Wear's conduct implicates consumer protection concerns. As Easton notes, the ICFA incorporates the same conduct prohibited by the Illinois Uniform Deceptive Trade Practices Act ("IDTPA"), a theory of liability Easton also advances. But non-consumer ICFA plaintiffs must additionally "show a nexus between the complained of conduct and consumer protection concerns." *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 823 (7th Cir. 2018). Easton's allegation that Primal Wear's conduct will cause customer confusion fails to satisfy that requirement, and the record is similarly devoid of any evidence suggesting that customers have been harmed. Easton, therefore, cannot proceed on that legal theory.

long as "the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." *Chattanoga* 301 F.3d at 793 (citing *Johnston v. Standard Mining Co.*, 148 U.S. 360, 370 (1893)).

Primal Wear argues that Easton has had constructive knowledge ever since Primal Wear registered its trademarks. It is undisputed that Primal Wear first registered its PRIMAL WEAR mark in 2000 and its PRIMAL mark in 2008. DSOF at ¶ 27, 28. And, as Primal Wear notes, the Lanham Act provides that registration of a trademark provides constructive notice of the registrant's claim of ownership. 15 U.S.C. § 1072, *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1300 (2015). But constructive notice of trademark ***ownership*** does not in itself establish constructive notice of potentially infringing trademark ***use***. *See Barrington Music Products, Inc. v. Guitar Ctr. Stores, Inc.*, 3:16-CV-6-RLM-MGG, 2018 WL 1083815, at *3 (N.D. Ind. Feb. 28, 2018) (trademark registration did not impute plaintiff with constructive notice for purposes of laches because, unlike an ex-licensee's registration of a trademark after its license to use the mark had expired, infringement was not "instantaneous" upon registration); 6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:40 (5th ed.) ("The statutorily created 'constructive notice' of a federal registration does not inform the true trademark owner of . . . a provable claim based on a significant amount of infringing use."). Absent some further evidence that Easton should have been aware of Primal Wear's potentially infringing conduct at the time it registered its trademarks, the registration itself tells us relatively little. [13]

Primal Wear's only other argument regarding constructive knowledge is that its 1996 website launch provided Easton with notice of its activities. While it is undisputed that Primal

---

[13] One might argue that the statutory constructive notice provision is nevertheless relevant to Easton's trademark ***cancellation*** action. As the Federal Circuit has explained, in a cancellation proceeding the objection is to "the rights which flow from ***registration*** of the mark" (*i.e.*, the claim

Wear began offering its PRIMAL WEAR and PRIMAL branded athletic apparel to "consumers around the world" via its website in 1996, DSOF at ¶ 37, Primal Wear has not provided a sufficient factual basis to conclude as a matter of law that the website triggered Easton's duty to investigate, or that "due inquiry" at that time would have revealed the extent of Primal Wear's activities. Indeed, Primal Wear cites only to *JDR Industries, Inc. v. McDowell*, 121 F. Supp. 3d 872, 889 (D. Neb. Aug. 4, 2015) in support of its argument, a case in which the court found that the defendant's claim of trademark ownership (as shown through both the operation of a website **and** a state registration for use of a tradename) provided "some degree" of constructive notice, but nevertheless declined to apply laches given that the factual record was not sufficiently developed. *Cf. Chattanoga* 301 F.3d at 793 (constructive notice found where the undisputed facts revealed that Nike had launched a prominent, national advertising campaign incorporating its trademarks). The mere fact that Primal Wear had a website does not establish that Easton should have known of its potentially infringing activities.

As for actual knowledge, Primal Wear claims that it informed Easton of its activities in 2010 when it spoke to Easton on the phone and sent a letter offering to purchase the PRIMAL MODE mark. Defendant's Memorandum in Support of its Motion to Dismiss at 6. Easton, on the other hand, claims that he does not remember receiving a call or a letter from Primal Wear. He maintains that he was not aware that Primal Wear even existed until October 19, 2015, and that he did not realize that Primal Wear was engaging in potentially infringing conduct until Primal Wear

---

of ownership) rather than the **use** of that mark. *Nat'l Cable Television Ass'n, Inc. v. Am. Cinema Editors, Inc.*, 937 F.2d 1572, 1581 (Fed. Cir. 1991) (emphasis added). But the Lanham Act provides that a cancellation petition may be filed "within five years from the date of the registration of the mark" 15 U.S.C. § 1064 (1), and Easton has complied with that directive. *See supra* note 9.

filed its cancellation petition on March 15, 2017. Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment at 7-8.

An inquiry by someone interested in purchasing the PRIMAL MODE mark may have been sufficient to provide constructive notice even if Easton did not subjectively become aware of Primal Wear's conduct until later. But there is a genuine dispute of material fact as to when that communication first took place.[14] The record conclusively shows only that Primal Wear and Easton were communicating about the PRIMAL MODE mark by October 2015. If that was the first time Easton had notice, his filing of this complaint two years later was not an unreasonable delay. *See Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 822 (7th Cir. 1999) (laches presumed not to apply where action filed within limitations period of analogous state law); *see also Chattanoga*, 301 F.3d at 793 (recognizing that the analogous state law for trademark infringement in Illinois is the ICFA, which provides that an action for damages "shall be forever barred unless commenced within 3 years after the cause of action accrued," 815 ILCS 505/10a(e)). It may very well be that Easton knew or should have known of Primal Wear's activities at an earlier date. But because there are genuine issues of material fact regarding when that notice occurred, Primal Wear is not entitled to summary judgment on the basis of laches.[15]

*       *       *

---

[14] Primal Wear maintains Easton's lack of memory of the 2010 communication "is not sufficient to create a genuine issue of material fact." *United States v. Romero*, No. 15 C 5607, 2017 WL 61025, *7-8 (N.D. Ill. Jan. 5, 2017). But this mischaracterizes the record. In his response to Primal Wear's statement of facts, Easton affirmatively disputed receiving a call or letter in 2010. Additionally, during his 2018 deposition, Easton stated that the first time he had contact with anyone at Primal Wear was when Edwards contacted him "a couple years ago, year and a half ago"—*i.e.*, in 2015, not 2010. Defendant's Ex. 1 at 143:23–144:1. Drawing all reasonable inferences in his favor, Easton's statement that he had no recollection of Edwards's call can be fairly construed as a denial that it took place.

[15] Laches, of course, is an equitable defense that itself is not within the jury's province, *see AutoZone*, 543 F.3d at 934, but fact findings on which assessment of the defense depends must be

21

To recap: Primal Wear's motion for summary judgment on its counterclaim for partial cancellation of Easton's mark is denied because genuine disputes exist with respect to whether Easton partially abandoned his mark and whether modification of the mark would eliminate a likelihood of confusion. The same goes for Primal Wear's motion for summary judgment on Easton's cancellation petition and his federal and state trademark infringement and unfair competition claims, because genuine disputes exist with respect to 1) whether Primal Wear's use of its marks is likely to cause customer confusion and 2) whether Easton unreasonably delayed filing this suit. Easton's request for a declaration of non-infringement, however, is denied, and Easton's ICFA theory is rejected because no evidence of a consumer nexus has been presented.

Dated: March 29, 2019

John J. Tharp, Jr.
United States District Judge

---

determined by a jury. And as a jury must resolve the disputed fact issues discussed above, there is no need to address here the evidence adduced to date regarding other fact issues that are also implicated by the laches defense, such as willfulness.